IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EVAMARIE LONG NORMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-12-223-SPS |

## OPINION AND ORDER

The claimant Evamarie Long Norman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2]Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born March 29, 1990, and was twenty years old at the time of the administrative hearing. (Tr. 40, 166). She completed high school and attended some college, and has no past work. (Tr. 32, 53-55). She alleges that she has been disabled since childhood, due to a seizure disorder and bipolar disorder.

## Procedural History

The claimant was originally awarded supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, based on disability as a child, but a redetermination following her eighteenth birthday resulting in a finding that the claimant was no longer disabled as of June 30, 2009. The claimant moved for reconsideration, but her request was denied. ALJ Deborah L. Rose then held an administrative hearing and determined the claimant was not disabled in a written opinion dated July 28, 2011. (Tr. 25-34). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant could perform a full range of work at all exertional levels, but that she

had nonexertional impairments in that she could not perform work that required exposure to hazards such as dangerous machinery or unprotected heights, she was limited to simple routine tasks with only superficial interaction with co-workers and supervisors, and she was to have no contact with the general public. (Tr. 29). The ALJ concluded that, although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, hand packager (medium), hand packager (light), industrial cleaner, and sorter. (Tr. 33).

## Review

The claimant contends that the ALJ erred: (i) because her RFC precludes the jobs listed by the ALJ at step five, and (ii) by failing to properly evaluate her credibility. The Court finds the claimant's second contention persuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of seizure disorder with headache, obesity, and bipolar disorder. (Tr. 27). The relevant medical evidence reveals that the claimant first had a seizure when she was two years old, and that she has been treated for her seizures ever since. (Tr. 407-408). During August 3-7, 2009, the claimant went through epilepsy monitoring at UCSD San Diego, California. During that time, she had ten clinical events—three clinical seizures and seven non-clinical seizures. (Tr. 475-478). The discharge diagnosis was mixed epilepsy consisting of nonepileptic as well as epileptic seizures. (Tr. 405). A brain scan revealed mild decreased volume of the body of the right hippocampus, which may reflect underlying hippocampal sclerosis. (Tr. 413). In July 2010, the claimant's neurologist noted that the claimant's medication had to

be maximized to control her events, and in September the claimant reported no seizures for three weeks previously. (Tr. 461-462). In March 2011, the claimant reported a seizure three weeks previous. (Tr. 512). The claimant was also treated for migraine headaches associated with her seizure episodes. (Tr. 306, 322, 462-463, 512). A neurological consultative examiner determined that the claimant had psychomotor seizure disorder and bipolar disorder. He indicated that her functional capacity would have no exertional limits, but that she should avoid exposure to unprotected heights and moving machinery. (Tr. 357).

As to her mental impairments, the claimant received treatment for bipolar disorder, but was noted to be improving with treatment. (Tr. 326). A consultative examiner noted that she gets agitated in social contexts, and that anxiety caused her to be agitated in social contexts approximately one to two times a week. (Tr. 327-328). He noted that she would have a fair ability to respond appropriately to changes in a work setting, but was good or unlimited in all other areas. (Tr. 329). A consultative examiner administered a number of tests and his diagnostic impression was: R/O cyclothymic disorder by symptom history, epilepsy, and a Global Assessment of Functioning score of 76. (Tr. 359-364).

At the administrative hearing, the claimant testified that she had been receiving SSI for a number of years, for her seizures and bi-polar disorder. (Tr. 48-49). She stated that she had never worked, but that she had attended college in California, had dropped out before completing a class because her grades were bad, and struggled to concentrate. (Tr. 52-54). Additionally, she stated that she had been in special education classes in

high school. (Tr. 53). She stated that she lived with her mother and did not work because she could not handle a job or big crowds, and that she considered even five people to be a big crowd. (Tr. 55-56). She stated that she experiences anxiety attacks when this happens. (Tr. 56). She testified that her seizures had been monitored in a hospital setting, and that her medications had been increased when she was released. (Tr. 57-60). She testified that she has seizures approximately two to three times a week, with them concentrated around her menstrual cycle. (Tr. 60). She stated that she gets migraine headaches in the aftermath of her seizures, that she sleeps for hours after they happen, and takes most of a day to recover from them. (Tr. 61-62). As to her bipolar disorder, she testified that she has "serious mood swings," in which she gets angry, yells, and breaks things. (Tr. 64). The claimant's mother also testified at the administrative hearing, asserting that she did not believe the claimant could work because she does not handle crowds well, she gets easily stressed, and she had dropped out of college because she could not handle it and deal with her seizures at the same time. (Tr. 66). She stated that her daughter had a couple of seizures a week, and that they occur at different times during the day, but that if she was home she would hold her daughter and talk to her during the seizure and help her through the confusion in the aftermath. (Tr. 67-68). The claimant and her mother both testified that she will bang on her wall when a seizure is beginning, and her mother will come to hold her and help her through it. (Tr. 60, 69).

      The ALJ noted the testimony of the claimant and her mother, then stated, "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the

claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 30). The ALJ then summarized the medical evidence and concluded that the claimant's daily activities were consistent with performing simple, unskilled work. The ALJ further found that the "objective evidence" proved the claimant was in school longer than she had stated and that her grades were bad because she had been spending too much time with a boyfriend, rather than due to any disability. She then gave great weight to a consultative examiner's opinion that the claimant did not have bipolar disorder, or any other anxiety disorder, despite her own finding that the claimant had the severe impairment of bipolar disorder. (Tr. 31-32). The ALJ then found her own RFC assessment to be reasonable. (Tr. 32).

Deference is generally given to an ALJ's credibility determination, unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL

374186, at *4 (July 2, 1996). The ALJ's credibility determination fell below these standards.

First, the ALJ mentioned but did not discuss the credibility factors set forth in Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529, 416.929, and further failed to apply them to the evidence.[3] She was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but "simply 'recit[ing] the factors'" is insufficient, *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4, and the ALJ did not even do that.

Second, the comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" showed an improper approach to credibility. The ALJ should have *first* evaluated the claimant's credibility according to the above guidelines and only *then* formulated an appropriate RFC, not the other way around; instead, the ALJ apparently judged the claimant's credibility according to an already-determined RFC. *See Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches.

---

[3] The factors to consider in assessing a claimant's credibility are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 96-7p at *3, 1996 WL 374186 (July 2, 1996).

Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."). *See also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

Third, the specific reasons given by the ALJ for finding that the claimant's subjective complaints were not credible are not entirely supported by the record. For example, the ALJ noted a report from the claimant's high school records that academic testing showed strengths in math and writing fluency, she ignored notations on the same page indicating that she was testing below basic and was exempt from statewide assessment. (Tr. 248-249). Further examination of such "perceived" inconsistencies indicates that the ALJ only cited evidence favorable to her foregone conclusions and ignored evidence that did not support her conclusions. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

Finally, the ALJ failed to properly address the claimant's mother's testimony. Social Security Ruling 06-03p provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 (August 9, 2006). Soc. Sec. Rul. 06-03p states, in part, that other source opinion evidence should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. The ALJ instead noted her hearing testimony, but ignored her completed Third Party Function Report (Tr. 218-225), and wholly failed to provide a meaningful analysis of her testimony. *See Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.").

"Because a credibility assessment requires consideration of all the factors in combination, when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, [the Court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination." *Bakalarski v. Apfel*, 1997 WL 748653 at *3 (10th Cir. 1997) [unpublished opinion] [quotation and citations omitted]. Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis of the claimant's credibility. On remand, the ALJ should properly evaluate the

-10-

evidence, then re-assess the claimant's credibility. If the ALJ's subsequent credibility analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma